USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/26/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
LEOLA RICHARDSON,                              :
                                               :
                              Plaintiff,       :
                                               :
        -against-                              :
                                               :    21-CV-09202 (VEC)
NATIONAL RAILROAD PASSENGER                    :
CORPORATION d/b/a AMTRAK,                      :    OPINION & ORDER
                                               :
                              Defendant.       :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Leola Richardson ("Plaintiff") sued National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak"), for negligence and various regulatory violations[1] that allegedly caused her injuries while on board an Amtrak train en route from New York to South Carolina.[2] Defendant moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and, in the alternative, to transfer the case to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). Plaintiff also moved to transfer the case to the District of South Carolina if the Court were to find that it lacks personal jurisdiction over Amtrak. For the reasons stated below, the Court has personal jurisdiction over Defendant. Accordingly, Defendant's motion to dismiss is DENIED; Defendant's motion to transfer is DENIED; and Plaintiff's motion to transfer is DENIED as moot.

---

[1] Plaintiff alleges violation of the Safety Appliances Act, 49 U.S.C. §§ 20301 *et seq.*, violation of the Locomotive Safety Act, 49 U.S.C. § 20701, and various violations of 49 C.F.R. § 220 (Railroad Communications) and § 229 (Railroad Locomotive Safety Standards). Am. Compl., Dkt. 13, ¶¶ 55, 57, 59.

[2] Plaintiff originally filed suit in New York state court; Amtrak removed the case to federal court. Not. of Removal, Dkt. 2.

1

**BACKGROUND**[3]

Leola Richardson, a New York resident, purchased a round-trip ticket in New York for round-trip passage via Amtrak from New York Penn Station to Charleston, South Carolina. Am. Compl., Dkt. 13, ¶ 41. While en route, the train stopped at a train station in Kingstree, South Carolina, and Plaintiff stood up. *Id.* ¶¶ 43–45. The train suddenly jerked, *id.* ¶ 45, causing Plaintiff to be "thrown about" the train car, *id.* ¶ 46. Plaintiff alleges that the jerking was caused by an operational error and a mechanical defect that resulted from negligent maintenance of the train equipment while it was in Amtrak's New York rail yard. *Id.* ¶¶ 17, 26, 47. Plaintiff sought emergency medical care in South Carolina but has since received medical care in New York. *Id.* at ¶¶ 48–49; Pl. Resp., Dkt. 22 at 2.

**DISCUSSION**

**I.     The Court Has Personal Jurisdiction Over Amtrak**

Amtrak, which is incorporated in and has its principal place of business in Washington, D.C., has moved to dismiss for lack of personal jurisdiction. *See* Def. Mem. of Law, Dkt. 18 at 2, 6; *see also* 49 U.S.C. § 24301(b). When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). When the motion to dismiss is made at the pleadings stage, the plaintiff need make only a *prima facie* showing that jurisdiction exists. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) (citation omitted).

It is hornbook law that a federal court must have personal jurisdiction over a defendant before the court may adjudicate the merits of a case, *see, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*,

---

[3]     The facts are taken from the Amended Complaint and are assumed true for purposes of these motions.

526 U.S. 574, 584 (1999), and that personal jurisdiction can be specific or general, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction, or "all-purpose" jurisdiction, "permits a court to adjudicate any cause of action against [a] corporate defendant, wherever arising, and whoever the plaintiff," *id.*, so long as the corporate defendant can be deemed "at home" in the forum state, *id.* at 625. Specific jurisdiction, also called "case-linked" jurisdiction, "is available when the cause of action . . . arises out of the defendant's activities in a state," even when the defendant is not "at home" in the forum. *Id.* at 624.

In federal question cases, both kinds of personal jurisdiction are governed by the law of the state in which the court sits and by the limits of due process. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). First, the Court looks to the relevant long-arm statute of the forum state, which, in this case, is New York. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). If the exercise of jurisdiction is appropriate under New York's long-arm statute, the Court must then decide whether such exercise would comport with due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

### A. The Court Does Not Have General Jurisdiction over Amtrak

Pursuant to N.Y. C.P.L.R. § 301, a court in New York may exercise general jurisdiction over an out-of-state defendant if the defendant "engaged in 'continuous, permanent, and substantial activity in New York.'" *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)). Despite the broad wording of § 301, the Second Circuit has consistently reaffirmed that *Daimler* limits a court's general jurisdiction over an out-of-state corporation to "exceptional case[s]" in which the corporation's "contacts are so 'continuous and systematic,'

3

judged against the corporation's national and global activities, that it is 'essentially at home' in [the forum]." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2013) (quoting *Daimler AG v. Bauman*, 571 U.S. at 139).

Amtrak is incorporated and has its principal place of business in Washington D.C. Def. Mem. of Law at 2, 6; 49 U.S.C. § 24301(b). Plaintiff alleges that Amtrak does more than twice as much business at Penn Station than at its station in Washington, D.C., which is its second busiest station, Am. Compl. ¶ 37; it has offices in New York, *id.* ¶ 34; it maintains many employees in New York, *id.* ¶ 27; Pl. Resp. 1; and it accepts service of process in New York, Pl. Resp. at 6. But those facts collectively do not add up to Amtrak being "at home" in New York. *See McConney v. Amtrak*, No. 18-CV-05290, 2020 WL 435366, at *2–3 (E.D.N.Y. Jan. 27, 2020) (finding no general jurisdiction over Amtrak in New York under similar facts).

Because Amtrak is not "at home" in New York, this Court does not have general jurisdiction over it.

### B.  This Court Has Specific Jurisdiction over Amtrak

Pursuant to N.Y. C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary that, "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Plaintiff bears the burden of demonstrating that the two requirements of § 302(a)(1) are satisfied: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation omitted). A claim arises from business activity "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up). An "articulable nexus or substantial relationship exists 'where at least one element [of the claim] arises from the New

4

York contacts.'" *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017) (quoting *Licci v. Leb. Can. Bank, SAL*, 20 N.Y.3d 327, 339, 341 (2012)). A merely coincidental connection or relationship between the New York transaction and the claim is not enough. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

There is no dispute that Amtrak conducts business in New York. *See* Def. Reply, Dkt. 29 at 3. Plaintiff alleges sufficient facts to support the conclusion that Plaintiff's claim that she was injured because of negligent handling of the train or because of a mechanical fault that should have been addressed during maintenance in New York, *see* Am. Compl. ¶ 47, arises from Amtrak's business activities in New York, to wit: selling Plaintiff in New York a ticket for train travel out of New York on a train that was serviced in New York, *id*. ¶¶ 13, 17, 41. "[W]here at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [§ 302(a)(1)]." *Licci*, 20 N.Y.3d at 341; *see also D&R Global Selections, S.L.*, 29 N.Y.3d at 299. Plaintiff alleges sufficient facts to establish a *prima facie* case that at least two elements of her negligence claim arose in New York: duty and breach.

First, Defendant's duty to exercise reasonable care in transporting Plaintiff arose in New York when Plaintiff boarded the train at Penn Station. *See Bethel v. New York City Transit Auth.*, 92 N.Y.2d 348, 356 (1998) (stating common carriers have a duty to exercise reasonable care in transporting their passengers); *Zito v. United Airlines, Inc.*, 523 F. Supp. 3d 377, 385 (W.D.N.Y. 2021) (a common carrier's duty of care arises upon a passenger's boarding). As one court in the Eastern District of New York observed, a "train crash . . . directly implicates Amtrak's 'duty to exercise reasonable care for the safety of its passengers.'" *McConney*, 2020

WL 435366, at *3 n.3 (citing *Voccia v. United States*, No. 12-CV-5909, 2017 WL 1194652, at *6 (E.D.N.Y. Mar. 31, 2017)); *see also Kerman v. Intercontinental Hotels Grp. Res. LLC*, No. 20-CV-1085, 2021 WL 930253, at *4 (E.D.N.Y. Mar. 11, 2021) ("In the case of a foreign tort, generally either the duty that was breached or the injury . . . must have originated in New York to satisfy § 302(a)(1)." (cleaned up)); *but see Simmons v. National Railroad Passenger Corp.*, No. 19-CV-6986, 2020 WL 2904847, at *4 n.2 (S.D.N.Y. June 3, 2020) (disagreeing with *dicta* in *McConney* suggesting that New York courts may have personal jurisdiction over injuries caused by an out-of-state crash on a New York-bound train that implicated Amtrak's duty of care where the plaintiff purchased the ticket in New York).

In *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317 (2d Cir. 1964), the Second Circuit held that a common carrier's duty to transport passengers safely could not support specific jurisdiction when the common carrier does not assume a duty of care in New York and the negligence causing the injury is unconnected to any negligent acts in New York. *Id.* at 321–22. In *Gelfand*, plaintiffs purchased a ticket in New York for a bus that they boarded in Nevada; they suffered injuries from the negligence of the bus driver, who had no connection to the New York ticket seller. *Id.*. In contrast, in this case, Amtrak assumed a duty of care in New York where Plaintiff boarded the train, and, unlike the negligence of the driver in *Gelfand*, Plaintiff asserts that her injuries were caused by Amtrak's negligent maintenance of equipment in New York.

Second, Plaintiff has alleged that her injuries were caused by Defendant's negligent acts in New York, including "failing to have properly functioning brake equipment on the cars making up the train, . . . failing to perform proper daily . . . [and] periodic inspections, [and] . . . failing to equip [the train] with a locomotive in proper condition." Am. Compl. ¶ 47. Because Amtrak "had a repair and maintenance yard for its locomotive and passenger cars in Sunnyside,

Queens, where it serviced, inspected and stocked its trains," *id.* ¶ 17, and the train on which Plaintiff was injured "originated in Sunnyside Yard, Queens," *id.* ¶ 26, Plaintiff makes out a *prima facie* case that Defendant's negligence occurred in New York, even though Plaintiff was injured in South Carolina.[4]

Taken alone, a ticket sale in New York or travel that originates or terminates in New York is insufficient to support personal jurisdiction over an injury that occurred outside of New York during the course of travel. *See, e.g.*, *H.B. by Barakati v. China S. Airlines Co. Ltd.*, No. 20-CV-9106, 2021 WL 2581151, at *5–6 (S.D.N.Y. June 23, 2021); *Lensky v. Yollari*, No. 20-CV-4978, 2021 WL 4311319, at *7 (S.D.N.Y. Sep. 20, 2021); *Simmons v. AMTRAK*, , 2020 WL 2904847, at *3–4 ); *Zito*, 523 F. Supp. 3d at 385–87; *Cordice v. LIAT Airlines*, No. 14-CV-2924, 2015 WL 5579868, at *4–5 (E.D.N.Y. Sep. 22, 2015). Further, where injury is not a result of negligence in the act of transportation itself but rather due to negligence independent of transportation — *e.g.*, spilled coffee, *Cordice*, 2015 WL 5579868, at *1, *4–5; or a slip and fall in a station restroom when the passenger had temporarily disembarked from the train, *Simmons*, 2020 WL 2904847, at *1, *4 n.2 — the connection between the injury and New York is too attenuated to support jurisdiction. *See H.B.*, 2021 WL 2581151, at *4 (finding no personal jurisdiction where a tray table closed on an infant's finger on an international flight that never touched New York); *Zito*, 523 F. Supp. 3d at 380, 385–386 (finding no personal jurisdiction where Plaintiff was injured by a beverage cart on a connecting flight neither departing from nor arriving in New York).

---

[4] Defendant argues that the Court lacks jurisdiction pursuant to § 302(a)(3) of the N.Y. C.L.P.R., which gives New York courts jurisdiction over defendants who have committed tortious acts outside of New York that cause injury within New York. *See* Def. Mem. of Law, Dkt. 18 at 10–11. Because Plaintiff does not argue that § 302(a)(3) applies, and the Court finds that there is jurisdiction under § 302(a)(1), the Court does not address Defendant's arguments concerning § 302(a)(3).

7

Plaintiff, however, alleges that she bought a ticket in New York for a train that she boarded in New York and that she was injured on board that train due to negligence that occurred in New York. Am. Compl. ¶¶ 13, 46, 47. That combination of factors is sufficient to satisfy the requirements of C.P.L.R. § 302(a)(1).

### C. The Exercise of Personal Jurisdiction Does Not Violate Due Process

Specific jurisdiction can be exercised over a nonresident defendant without running afoul of the due process protections of the Constitution if (1) the defendant has "purposefully availed itself of the privilege of conducting activities within the forum State," (2) "the plaintiff's claim . . . arise[s] out of or relate[s] to the defendant's forum conduct, and (3) "the exercise of jurisdiction is reasonable under the circumstances." *U. S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (internal quotations and citations omitted).

As discussed above, Amtrak conducts business in New York and that business is substantially related to Plaintiff's injury and claim. "It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of § 302(a)(1), and yet . . . [the defendant] cannot be found to have 'purposefully availed itself'" of the forum state within the meaning of due process. *Licci*, 732 F.3d at 170 (quoting *Bank Brussels*, 305 F.3d at 127). Furthermore, Amtrak substantially benefits from the laws of New York as it conducts a high volume of business here. *See* Am. Compl. ¶ 38 (alleging that Amtrak boards millions of passengers at Penn Station).

For a party to defeat the exercise of jurisdiction on due process grounds under the "reasonableness" prong, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Because Defendant fails to address the reasonableness prong entirely, and

8

there are no other considerations that render jurisdiction unreasonable, the Court finds that the exercise of personal jurisdiction comports with the requirements of the Due Process Clause.

## II.     Transfer is Inappropriate

Having established that the Court has personal jurisdiction over Defendants for the purposes of Plaintiff's claims, the Court considers Defendant's motion to transfer the case to South Carolina. Def. Mem. of Law at 13. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. In exercising their "broad discretion" to determine whether transfer is appropriate, *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992), courts first determine whether the action could have been brought in the prospective transferee district and then consider whether transfer would be appropriate, *see Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017). The parties agree that South Carolina is a proper venue pursuant to 28 U.S.C. § 1391(b)(2). *See* Def. Mem. of Law at 13; Pl. Transfer Mem. of Law, Dkt. 25 at 4–5. In determining whether transfer is appropriate, courts consider several factors, including:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Enigma,* 260 F. Supp. 3d at 407 (quoting *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013)) (internal quotation marks omitted). A plaintiff's choice to sue in her home forum is generally not disturbed "unless the balance [of convenience factors] is strongly in favor of the defendants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). As the moving

party, Defendant bears the burden of demonstrating that convenience requires transfer. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016) (citations omitted).

Amtrak has not demonstrated that transfer is appropriate. *See Dickerson*, 315 F.R.D. at 29 ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." (internal quotation omitted)). Plaintiff is elderly and disabled, Pl. Resp. at 15; Am. Compl. ¶ 49, and transfer would move the case away from the city of her residence and the location of her only planned witnesses, Pl. Resp. at 15. Amtrak, with a corporate office in Manhattan, s*ee* Am. Compl. ¶ 34; Pl. Resp. at 15, could feasibly coordinate the suit in New York with less hardship than Plaintiff could in South Carolina.[5] For these reasons, the interests of justice also disfavor transfer to South Carolina.[6]

Amtrak suggests that it may rely upon South Carolina-based witnesses, including the medical personnel who initially treated Plaintiff in South Carolina and "potential witnesses who may have seen . . . or have pertinent information about the subject incident and location." Def. Reply at 9. But vaguely alluding to "potential witnesses," as Amtrak does, is a far cry from providing a "detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Dickerson*, 315 F.R.D. at 27.

While the location of injury is important in determining which district houses the locus of operative facts, *see, e.g.*, *Delarosa v. Holiday Inn*, No. 99-CV-2873, 2000 WL 648615, at *4 (S.D.N.Y. May 18, 2000) (finding that the locus of operative facts favored transfer because

---

[5] Neither party, however, has provided the necessary "documentation showing that transfer would be financially burdensome," to argue that the relative means of the parties has an impact on convenience. *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 332 (S.D.N.Y. 2016) (internal quotation omitted).

[6] No party has suggested that any witnesses would be unwilling to travel to New York if required.

plaintiff's injury and emergency medical treatment occurred in North Carolina), courts also consider the location of subsequent medical treatment and the extent to which the location of injury is useful in establishing liability, *see, e.g.*, *Schwartz v. Marriott Hotel*, 186 F. Supp. 2d 245, 250 (E.D.N.Y. 2002) (finding that the locus factor did not heavily favor transfer to the district of the site of injury in a straightforward slip and fall case where evidence was equally available in both the district of the injury and the district where plaintiff received medical care); *Donnolo v. Harrah's Operating Co.*, No. 08-CV-3282, 2009 WL 10709169, at *4 (E.D.N.Y. Apr. 29, 2009) (finding that although the potential transferee district was the site of the initial injury, this factor weighed only slightly in favor of transfer given that photographs of the scene would be the main evidence at trial and nearly all of plaintiff's medical treatment took place in New York). Although Plaintiff was injured in South Carolina, the geographical location of the injury holds little present evidentiary value for proving what happened to Plaintiff in October 2018. *See Merkur v. Wyndham Int'l, Inc.*, 2001 WL 477268, at *3 (E.D.N.Y. Mar. 30, 2001) (finding that although the transferee district was "the place where the injury underlying this action took place and where most of the evidence may be located," documentary evidence could easily be transferred to the current district). Plaintiff asserts that the negligent and unlawful conduct that caused the train to jerk were specific to the train and its operators, rather than to Kingstree Station, where she was injured. Am. Compl. ¶ 47. Because the train began service at Penn Station and was stocked and serviced by Amtrak at the Sunnyside Yard in New York, there is presumably equal if not greater access to the train, its crew, and potential witnesses in New York than in South Carolina.[7]

---

[7] Even if there were eyewitnesses from South Carolina, Defendant has not identified them to the court. Plaintiff, however, has declared that she only plans to call New York witnesses to testify to her medical care. Pl. Resp. at 15. At minimum, witnesses to at least "some operative facts, namely those relating to damages," are situated in New York. *Williams v. Frank Martz Coach Co.*, No. 13-CV-1860, 2014 WL 2002853, at *2 (E.D.N.Y.

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (cleaned up). Although transfer would not greatly compromise judicial efficiency, as this case has not developed past the pleading stage, Defendant has failed to carry its burden of demonstrating that trial efficiency would be improved by transfer to South Carolina. Accordingly, Defendant has failed to carry its burden of demonstrating that the balance of convenience favors transfer.

## CONCLUSION

Because this Court has specific jurisdiction over Amtrak pursuant to N.Y. C.P.L.R. § 302(a)(1), Defendant's motion to dismiss is DENIED. For the reasons discussed above, Defendant's request to transfer the case to South Carolina is DENIED. Plaintiff's motion for transfer is DENIED as moot. The Clerk of Court is respectfully directed to close the open motions at docket entries 16 and 23.

The parties' initial pretrial conference submissions, as described in the Court's November 16, 2021, Order at docket entry 4, are due no later than **Thursday, September 29, 2022**. The initial pretrial conference will take place on **Friday, October 7, 2022**, in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Date:  August 26, 2022                         VALERIE CAPRONI
New York, New York                             United States District Judge

---

May 14, 2014).  In short, Defendant has not persuaded the Court that transferring on the basis of locus consideration would, on balance, provide better access to evidence or witnesses that are material to proving or disproving liability.